# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>B&G Futures Inc.<br><br>        Involuntary Debtor. | Chapter 7<br><br>Case No. 21-60063<br><br>Judge Russ Kendig |

**MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105(A), 303, & 305 (I) DISMISSING THE INVOLUNTARY PETITION, (II) IMPOSING SANCTIONS AGAINST THE PETITIONING CREDITOR, AND (III) DIRECTING THE PETITIONING CREDITOR TO POST A BOND**

      B&G Futures, Inc. (the "Alleged Debtor") hereby files this motion (the "Motion") seeking the entry of an order, pursuant to sections 105(a), 303, and 305 of title 11 of the United States Code (the "Bankruptcy Code"), (i) dismissing the involuntary chapter 7 petition filed against the Alleged Debtor, *nunc pro tunc* to the filing date and voiding the filings *ab initio*, (ii) imposing sanctions against Dan-Bunkering (America) Inc. (the "Petitioning Creditor"), and (iii) directing the Petitioning Creditor to post a bond. In support of the Motion, the Alleged Debtor files the Declaration of Steve DiPietro (the "Declaration") contemporaneously herewith and respectfully states as follows:

## Preliminary Statement

      1.    The Involuntary Petition was filed in bad faith and should be dismissed. For one, although the Petitioning Creditor states to question 13 of the Petition that the nature of its claim is "Assignment/Trade Debt" of $350,000, the Petitioning Creditor fails to answer "yes" to question 12 and fails, then, to attach all documents evidencing the assignment of its claim required by Bankruptcy Rule 1003(a). Involuntary Petition. [Doc. # 10]. Upon information and belief, the

claim that was assigned is a disputed claim by and between the Alleged Debtor and iChor Oil, LLC in connection with certain consulting services. Declaration ¶ 6. The Alleged Debtor believes that iChor Oil, LLC and its CEO, Gary Stanley, converted certain of the Alleged Debtor's assets and conspired with the Petitioning Creditor in its alleged claim assignment. *Id.* ¶ 7. Additionally, upon information and belief, the other portion of the Petitioning Creditor's claim is related to a contract that existed between the Petitioning Creditor and a third party, not the Alleged Debtor. *Id.* ¶ 5. The Alleged Debtor disputes both the "Assignment" claim and the "Trade" claim asserted by the Petitioning Creditor. It appears that because the Petitioning Creditor is aware of the dispute between itself and the Alleged Debtor, that it took an assignment of the iChor Oil, LLC "claim," likely under the assumption that it was undisputed, in order to file the involuntary petition. The Petitioning Creditor's motives are clear: to use this process as a means to gain an advantage in a dispute among the parties. *See In re Brazos Emergency Physicians Ass'n, P.A.* 471 F. App'x 272, 274 (5th Cir. 2011) (per curiam).

2. The Petitioning Creditor alleges, without basis, that the Alleged Debtor is not paying its debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount. Involuntary Petition. [Doc. # 10]. In fact, the Alleged Debtor is current with most of its creditors. *Id.* 4. The Alleged Debtor does have two claims for which it is not current, one that is disputed (CSX Transportation, Inc.) and one for which it has an agreed settlement (International Chemical Company). Declaration ¶ 4.

3. Finally, the Petitioning Creditor fails to meet the numerosity requirement of section 303(b)(1). The Alleged Debtor has at least 18 creditors, inclusive of the Petitioning Creditor. Declaration ¶ 3. Because (except for the disputed and settled claim) the Alleged Debtor is current with all of its other creditors, the numerosity requirement cannot be met in this case.

## Jurisdiction and Venue

4. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A). Venue of this Motion is proper pursuant to 28 U.S.C. §1408 and 1409.

## Background

5. The Alleged Debtor is a wholesale trading company that contracts with logistics and trucking companies to deliver petroleum products directly from US refineries to clients. Declaration ¶ 2. The Alleged Debtor purchases the product, resells it directly to customers, and contracts with a dedicated fleet of rail cars and trucks to deliver it to customers. Declaration ¶ 2.

6. The Petitioning Creditor is a company that had a contract directly with one of the Alleged Debtor's suppliers. Declaration ¶ 5. Although initially the Alleged Debtor, as a potential broker, and Petitioning Creditor had a relationship, an agreement did not materialize. The Petitioning Creditor, unhappy with this outcome and after an issue with the supplier, asserted a claim against the Alleged Debtor. *Id.* ¶ 5. Upon information and belief (although no documentation was provided with the petition), the Petitioning Creditor then took an assignment of the iChor Oil, LLC disputed claim. *Id.* ¶ 6.

7. The Alleged Debtor disputes both claims and refused to negotiate with the Petitioning Creditor. Instead of filing an action in state or federal court against the Alleged Debtor, the Petitioning Creditor filed the involuntary petition (on January 20, 2021)[1] either to gain an advantage in its dispute with the Alleged Debtor or to harm the Alleged Debtor's business.

---

[1] Notably, no certificate of service evidencing service of the summons has been filed on the docket.

## Argument

**I.    The involuntary petition should be dismissed as it was filed in bad faith.**

8.    As a preliminary matter, Rule 1011(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), which governs motions to dismiss involuntary bankruptcy petitions pursuant to section 303 of the Bankruptcy Code, provides that all defenses and objections to an involuntary petition must be presented in the manner set forth in Rule 12 of the Bankruptcy Rules. Rule 12 of the Federal Rules of Civil Procedure allows certain defenses—including the defense of Rule 12(b)(6) for "failure to state a claim upon which relief can be granted"—to be asserted in the form of a pre-answer motion. Accordingly, the Alleged Debtor seeks dismissal of the Involuntary Petition pursuant to Fed. R. Civ. P. 12(b)(6) because the Petitioning Creditor cannot meet its burden of showing compliance with the requirements of section 303 of the Bankruptcy Code.

9.    The filing of an involuntary petition is an extraordinary remedy and should be reviewed with heightened scrutiny because "such an action is extreme in nature and carries with it serious consequences to the alleged debtor." *In re Landmark Distribs., Inc.*, 189 B.R. 290, 306 (Bankr. D.N.J. 1995). "Congress intended the Bankruptcy Code as a shield for debtors, not a sword for creditors." *In re Drexler*, 56 B.R. 960, 971 (Bankr. S.D.N.Y. 1986). In this case, the Petitioning Creditor is attempting to wield a sword at the expense of the Alleged Debtor and its business affairs. The Alleged Debtor respectfully requests that this Court dismiss this matter pursuant to sections 303 and 305 of the Bankruptcy Code because it was filed in bad faith.

10.    Section 305 of the Bankruptcy Code provides that: "The court, after notice and a hearing, may dismiss a case under this title . . . at any time if—(1) the interest of creditors and the debtor would be better served by such dismissal . . . ." An involuntary bankruptcy petition filed in

4

21-60063-rk    Doc 18    FILED 02/11/21    ENTERED 02/11/21 17:07:54    Page 4 of 9

bad faith is subject to dismissal. *In re Forever Green Athletic Fields, Inc.*, 804 F.3d 328, 334–35 (3d Cir. 2015). The term "bad faith" is not defined in the Bankruptcy Code and legislative history does not address the intended meaning of this language. For these reasons, courts have used different approaches to determine whether an involuntary petition was filed in bad faith. *Lubow Mach. Co. v. Bayshore Wire Prods. Corp. (In re Bayshore Wire Prods. Corp.)*, 209 F.3d 100, 105 (2d Cir. 2000).

11. Some courts use the "improper use" test, which supports a finding of bad faith when a petitioning creditor uses "involuntary bankruptcy procedures in an attempt to obtain a 'disproportionate advantage' for itself, rather than protect against other creditors obtaining disproportionate advantages, particularly when the petitioner could have advanced its own interests in a different forum." *See id.* Other courts utilize the "improper purpose" test, which supports a finding of bad faith when the filing of the petition "was motivated by ill will, malice, or a desire to embarrass or harass the alleged debtor." *Id.* (citing *In re Camelot, Inc.*, 25 B.R. 861, 864 (Bankr. E.D. Tenn. 1982). A third line of cases applies the "objective" test, which gauges what a reasonable person would have done in the petitioning creditor's position. *In re Forever Green Athletic Fields*, 804 F.3d at 336. Finally, a fourth line of cases has utilized a "totality of the circumstances" approach to assessing whether a petition was filed in bad faith. *Id.* (citing *Adell v. John Richards Homes Bldg. Co. (In re John Richards Homes Bldg. Co.)*, 439 F.3d 248, 256 (6th Cir. 2006)). The totality of the circumstances standard examines the petitioning creditor's conduct and looks to both objective and subjective evidence of bad faith. *Id.*

12. The Sixth Circuit applies the "totality of the circumstances" test. This test "effectively combines all the tests and looks to both subjective and objective evidence of bad faith." *In re Forever Green Athletic Fields*, 804 F.3d at 336.

> In conducting this fact-intensive review, courts may consider a number of factors, including, but not limited to, whether: the creditors satisfied the statutory criteria for filing the petition; the involuntary petition was meritorious; the creditors made a reasonable inquiry into the relevant facts and pertinent law before filing; there was evidence of preferential payments to certain creditors or of dissipation of the debtor's assets; the filing was motivated by ill will or a desire to harass; the petitioning creditors used the filing to obtain a disproportionate advantage for themselves rather than to protect against other creditors doing the same; the filing was used as a tactical advantage in pending actions; the filing was used as a substitute for customary debt-collection procedures; and the filing had suspicious timing.

*Id.*

13. Under the "totality of the circumstances" test, it is clear that the involuntary petition was filed in bad faith. For one, the Petitioning Creditor fails to satisfy the statutory criteria for filing the petition as it has both a disputed claim and fails to meet the numerosity requirements of the Bankruptcy Code. Significantly, the Petitioning Creditor fails to provide any information regarding its claim and fails to attach any documentation in support of its claim, leaving the Alleged Debtor guessing what claim, if any, the Petitioning Creditor holds. Additionally, except for certain disputed and settled debts (discussed above), the Alleged Debtor is paying all of its other debts as they become due. Upon information and belief, the Petitioning Creditor made no inquiry into any relevant facts (e.g., numerosity and solvency). It appears the filing was motivated by (a) ill will and a desire to harass the Alleged Debtor, (b) because the Petitioning Creditor is trying to obtain an advantage for itself, or (c) both. Finally, the filing is a substitute for debt-collection procedures because if the Petitioning Creditor had a claim, it should have sued the Alleged Debtor in the appropriate state or federal forum. Pure and simple, the Petitioning Creditor filed this case because it has a dispute with the Alleged Debtor, which is not what the Bankruptcy Code intended.

## II. The Alleged Debtor is entitled to punitive damages.

14. Section 303(i)(2) of the Bankruptcy Code provides that a Court may provide actual or punitive damages if it finds that an involuntary bankruptcy case was filed in bad faith. 11 U.S.C. § 303(i)(2) (2012). Should the Court dismiss this case as requested herein, the Alleged Debtor respectfully requests that it be awarded all costs and expenses it has incurred as a result of the filing pursuant to section 303(i)(2)(A), or (ii) punitive damages based on the malicious conduct of Petitioning Creditor in filing this case pursuant to § 303(i)(2)(B).

## III. The Alleged Debtor requests that Court require the Petitioning Creditor to post a bond pursuant to Section 303(e)

15. Pending the hearing on this Motion and any subsequent damages hearing, the Alleged Debtor respectfully requests that this Court require the Petitioning Creditor post a bond to indemnify the Alleged Debtor for such damages that the court may allow under Section 303. Section 303(e) of the Bankruptcy Code provides that a bankruptcy court may require a petitioning creditor to post a bond to indemnify the alleged debtor for such amounts as the court may later allow under § 303(i). 11 U.S.C. § 303(e) (2016). Legislative history indicates that the bonding requirement of § 303(e) is meant to "discourage frivolous petitions as well as more dangerous spiteful petitions, based on a desire to embarrass the debtor (who may be a competitor of a petitioning creditor) or to put the debtor out of business without good cause (an involuntary petition may put a debtor out of business even if it is without foundation and is later dismissed)." *LNC Investments, Inc. v. Secured Equip. Trust of Eastern Airlines, Inc. (In re Secured Equip. Trust of Eastern Airlines, Inc.)*, 1999 WL 2955943 at *6 (S.D.N.Y. Oct. 8, 1992) (quoting H.R. Rep. No. 95-595, at 323 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6279). In order for a bankruptcy court to require a bond, a movant must satisfy the following requirements: (i) notice; (ii) hearing;

and (iii) cause. 11 U.S.C. § 303(e); *see also In re Apollo Health St., Inc.*, No. 11-22970 (NLW), 2011 BL 137012, at *2 (Bankr. D.N.J. May 23, 2011).

16. Because this involuntary petition is frivolous and filed in bad faith, there is a high likelihood for an award for attorney's fees, costs, and compensatory or punitive damages. Accordingly, a bond is necessary to ensure that the Alleged Debtor is indemnified for such amounts.

## Conclusion

For the forgoing reasons, the Alleged Debtor respectfully requests that the Court (i) dismiss the involuntary petition *nunc pro tunc* to the filing date, (ii) schedule an evidentiary hearing on the issue of punitive and compensatory damages, (iii) require the Petitioning Creditor to post a bond, and (iv) grant the Alleged Debtor such other and further relief as the Court deems just and proper.

Dated: February 11, 2021  Respectfully submitted,

/s/ *Bridget A. Franklin*
Marc B. Merklin (0018195)
Bridget A. Franklin (0083987)
Brouse McDowell LPA
388 S. Main Street, Suite 500
Akron, Ohio 44311
Telephone: (330) 535-5711
Facsimile: (330) 253-8601
mmerklin@brouse.com
bfranklin@brouse.com

*Attorneys for B&G Futures Inc.*

# CERTIFICATE OF SERVICE

I, Bridget A. Franklin, hereby certify that on the 11th day of February, 2021, a true and correct copy of the **Motion For Entry Of An Order Pursuant To 11 U.S.C. §§ 105(A), 303, & 305 (I) Dismissing The Involuntary Petition, (II) Imposing Sanctions Against The Petitioning Creditor, And (III) Directing The Petitioning Creditor To Post A Bond** was served via the court's Electronic Case Filing System on these entities and individuals who are listed on the court's Electronic Mail Notice List:

- **J. Stephen Simms**   jssimms@simmsshowers.com, dmhnat@simmsshowers.com
- **United States Trustee**   (Registered address)@usdoj.gov

/s/ *Bridget A. Franklin*
Bridget A. Franklin (0083987)
Brouse McDowell LPA
388 S. Main Street, Suite 500
Akron, Ohio 44311
Telephone: (330) 535-5711
Facsimile: (330) 253-8601
bfranklin@brouse.com

1274199.3